

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOSE MUNGUIA MENDEZ,

        Plaintiff,

v.

NANCY BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

3:16-cv-00510-MMD-VPC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for reversal and/or remand (ECF No. 13), defendant's cross-motion to affirm (ECF No. 16), and plaintiff's reply (ECF No. 17). For the reasons set forth herein, the court recommends that plaintiff's motion be denied, and defendant's cross-motion be granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On June 6, 2013, Jose Munguia Mendez ("plaintiff") protectively filed for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act, alleging a disability onset date of June 30, 2012. (Administrative Record ("AR") 265-271, 272–278.) The Social Security Administration denied plaintiff's application in the first instance on December 17, 2013, and upon reconsideration on March 31, 2014. (*Id.* at 149-152, 156–158.)

On September 15, 2015, plaintiff and his attorney appeared at a hearing before Administrative Law Judge ("ALJ") Janice Shave. (*Id.* at 53–84.) The ALJ issued a written decision on November 17, 2015, finding that plaintiff had not been disabled at any time between the alleged onset date and the date of the decision. (*Id.* at 30–51.) Plaintiff appealed, and the

Appeals Council denied review on June 29, 2016. (*Id.* at 1–7.) Accordingly, the ALJ's decision became the final decision of the Commissioner ("defendant").

Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on August 30, 2016. (ECF No. 1.) In his motion for remand or reversal, plaintiff contends that (1) the ALJ's residual functional capacity ("RFC") assessment lacked the support of substantial evidence, and (2) the ALJ's credibility determination lacked the support of substantial evidence. (ECF No. 13 at 6–12.)

## II. STANDARD OF REVIEW

The initial burden of proof to establish disability in a claim for SSDI benefits rests upon the claimant. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To satisfy this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

This court has jurisdiction to review an ALJ's decision to deny a claim for benefits after the claimant has exhausted all administrative remedies. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012). The court must affirm the ALJ's decision unless it rests on legal error or is unsupported by substantial evidence in the administrative record. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). The substantial evidence standard is not onerous. It is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation omitted).

Although the ALJ need not discuss every piece of evidence in the record, she cannot ignore or omit evidence that is significant or probative. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012). The ALJ's discussion must adequately explain the decision in light of such evidence. "The ALJ, not the district court, is required to provide specific reasons for rejecting [the evidence.]" *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically

discussing rejection of lay testimony). The district court's review is thus constrained to the reasons asserted by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision; it "may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation omitted). Where "the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (internal quotation omitted). The ALJ alone is responsible for determining credibility and resolving ambiguities. *Garrison*, 759 F.3d at 1010.

### III. DISCUSSION

#### A. SSDI claims are evaluated under a five-step sequential process.

The Commissioner follows a five-step sequential process for determining whether a claimant is "disabled" for the purposes of SSDI. 20 C.F.R. § 404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one directs the ALJ to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the Commissioner denies the claim. *Id.* § 404.1520(b).

The second step requires the ALJ to determine whether the claimant's medically determinable impairment is "severe." *Id.* § 404.1520(a)(4)(ii). "Severe" impairments are those that significantly limit the claimant's physical or mental ability to do basic work activities. *Id.* § 404.1520(c). The Commissioner will deny the claim if the claimant lacks a severe impairment or combination of impairments. *Id.*

At step three, the claimant's impairment is compared to those listed in the Social Security Regulations at 20 C.F.R. Pt. 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). The list in Appendix 1 "define[s] impairments that would prevent an adult, regardless of his [or her] age, education, or work experience, from performing *any* gainful activity, not just substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal quotation omitted) (emphasis in original). Where the claimant's impairment is on the list, or is equivalent to a listed impairment, and the claimant also meets the corresponding durational requirement, the claimant is deemed

disabled. 20 C.F.R. § 404.1520(d). However, for an impairment to match a listing, "it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530 (emphasis in original).

If the Commissioner does not find disability at step three, review of the claim proceeds to step four. There, the ALJ considers whether the claimant can perform past relevant work despite the severe impairment. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled. *Id.* § 404.1520(e). The ALJ will find that the claimant can return to past relevant work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation omitted).

In making the step four determination, the ALJ considers the claimant's RFC and the physical and mental demands of the work previously performed. 20 C.F.R. § 404.1520(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). The RFC is the most the claimant can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). To determine the claimant's RFC, the ALJ must assess all the evidence, including medical reports and descriptions by the claimant and others of the claimant's relevant limitations. *See id.* § 404.1545(a)(3). The ALJ is not, however, required to accept as true every allegation the claimant offers regarding his or her limitations. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). The ALJ must follow a two-prong inquiry where the claimant alleges subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *see also* SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (internal quotation omitted). Second, if the first prong is met and no evidence suggests that the claimant is a malingerer, the ALJ may reject the claimant's allegations only by articulating "clear and convincing" reasons for doing so. *Id.*

The "clear and convincing" standard is the most demanding standard in Social Security case law, *Garrison*, 759 F.3d at 1015, and it requires the ALJ to "specifically identify the

testimony she or he finds not to be credible and [to] explain what evidence undermines the testimony," *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The ALJ must therefore cite to the record and discuss specific evidence therein. *See Vasquez v. Astrue*, 572 F.3d 586, 591–92, 592 n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ may consider a variety of factors in weighing a claimant's credibility, including inconsistencies in a claimant's testimony, his or her reputation for truthfulness, an inadequately explained failure to seek treatment, or a lack of support from the medical evidence. 20 C.F.R. § 404.1529(c); *Orn*, 495 F.3d at 636. The focus, however, is ultimately upon the reviewing court. The credibility determination must be "'sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.'" *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001)).

If step four demonstrates that the claimant cannot do the work he or she did in the past, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy. 20 C.F.R. § 404.1560(c). There, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). The ALJ will typically reference "the grids," under which a finding of disability may be directed, and also consider the testimony of a VE. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Where the grids do not direct a finding of disability, the ALJ must identify other jobs that the claimant can perform and which are available in significant numbers in the claimant's region or in several regions of the United States. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c). If the ALJ establishes that the claimant's RFC and transferable skills allow him or her to perform other occupations, the claimant is not disabled. 20 C.F.R. § 404.1566. Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, he or she is disabled and entitled to benefits. *Id.* § 404.1520(g).

**B.   The ALJ followed the five-step process and concluded that plaintiff was not disabled.**

In reviewing plaintiff's claims for benefits, the ALJ followed the five-step process described above. The ALJ first determined that plaintiff had not engaged in substantial gainful activity since June 30, 2012, the alleged onset date. (AR 38.) At step two, the ALJ found that plaintiff's large ventral hernia status post-surgical repair with mesh, mild cirrhosis of the liver, alcohol abuse in self-reported remission, and ammonia induced encephalopathy were severe impairments that significantly limited his ability to perform basic-work related functions. (*Id.*) The ALJ considered evidence of other complaints and diagnoses, including hypertension and obesity, but found those to be nonsevere. (*Id.* at 39.) At step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. (*Id.*)

The ALJ proceeded to step four and made several findings. To begin, the ALJ concluded that plaintiff had the RFC to perform a full range of work at all exertional levels, but with nonexertional limitations. (*Id.*) For example, that he must never crouch, crawl, or climb ladders, ropes or scaffolds. (*Id.*) The ALJ also found that he is limited to performing simple and some detailed, but uncomplicated tasks, such as climbing stairs, balancing, kneeling, and reaching overhead with his bilateral upper extremities. (*Id.*) Moreover, the ALJ found that plaintiff is able to understand, remember, and carry out detailed instructions in English. (*Id.*) Next, the ALJ found that plaintiff's impairments could be expected to cause the symptoms alleged, but that his statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (*Id.* at 40.) The ALJ cited several reasons as the basis for the adverse credibility finding, including inconsistency with plaintiff's reported daily activities and allegations of disabling functional limitations. (*Id.* at 41–42.) However, based on the evidence in the record and the testimony of the VE, the ALJ concluded that plaintiff was incapable of performing his past work's maximum RFC as a carpet cleaner, short order cook, and concrete laborer. (*Id.* at 43.)

Since step four demonstrated that the claimant cannot perform duties from his past employment, the ALJ proceeded to step five where she evaluated plaintiff's ability to perform

jobs available in the national economy. (*Id.* at 43.) The ALJ found that plaintiff is a younger individual at 48 years of age, he has a marginal education, and is able to communicate at a basic level, up to detailed instructions, in English. (*Id.* at 44.) Therefore, the ALJ held that plaintiff's age, education, work experience, and RFC does not preclude him from obtaining a job in the national economy. (*Id.*) The VE testified that plaintiff would be able to perform occupations such as a Garment Sorter, Marker II, and Laundry Folder. (*Id.*) According to the VE, there are approximately 80,000-90,000 positions in the national economy for each of the aforementioned positions. (*Id.*) As a result, the ALJ established that plaintiff is capable of performing a job in the national economy. (*Id.*)

A claimant is deemed not disabled at step five if plaintiff's RFC and transferable skills allow him to perform other occupations in the national economy. 20 C.F.R. § 404.1520(g), 416.920(g). Thus, having found that plaintiff could find work in the national economy, the ALJ held that plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act and denied his claim for benefits. (*Id.* at 45.)

### C. Substantial evidence supports the ALJ's RFC assessment in relation to plaintiff's English language skills.

Plaintiff first argues that the ALJ failed to properly evaluate his English language skills in assessing his RFC, as the evidence demonstrates that he has a more restrictive RFC than determined by the ALJ. (ECF No. 13 at 6–8.) Plaintiff's arguments relating to his English language skills will be discussed in turn.

#### 1. English competency

Plaintiff first discusses his English competency level and argues that "[t]he ALJ's finding that he retains the ability to understand, remember, and carry out detailed instructions and is capable of detailed but not complex written and English communication lacks the support of substantial evidence." (*Id.* at 6.) Specifically, plaintiff contends that ALJ's physical RFC limitations findings are correct, but that the ALJ failed to adequately evaluate plaintiff's English language level in assessing his RFC. (*Id.* at 6–8.) Plaintiff indicates that he received his hearing notice in Spanish, and required an interpreter for his hearing and consultative examination. (*Id.* at

6-7.) Thus, plaintiff argues that he was improperly designated to maintain a Language Level 1 competency, therefore precluding him from obtaining the VE's recommended occupations available in the national economy. (*Id.* at 6-7.)

However, defendant argues that the ALJ's RFC assessment properly found that plaintiff could communicate in English at a basic level, and receive detailed instructions in order to perform occupations requiring a Language Level 1 competency. (ECF No. 16 at 8–14.) The ALJ focused on plaintiff's prior twenty-five year work history, which required Language Level 2 competency, in order to demonstrate plaintiff's ability to meet English Language Level 1 standards. (*Id.* at 8.) In addition, the ALJ recognized plaintiff's abilities to listen, understand, and respond in English throughout the hearings. (*Id.* at 10.) Plaintiff does not point to any limitations that the ALJ failed to consider as a result of his interpretation of the evidence. In the absence of such a showing, the court cannot conclude that the ALJ committed reversible error. *See Lewis*, 498 F.3d at 911.

### D. The ALJ permissibly discounted plaintiff's subjective testimony.

Finally, plaintiff argues that the ALJ erred in failing to properly evaluate his subjective complaints. (ECF No. 13 at 8–12.) The ALJ articulated three main reasons for discounting plaintiff's subjective complaints. (*Id.*) Plaintiff disagreed with the ALJ's analysis of the following: (1) the conservative nature of plaintiff's treatment; (2) the extent of plaintiff's daily activities; and (3) that the objective evidence in the record did not support plaintiff's complaints. (*Id.* at 10–12.) The court considers each in turn.

First, the ALJ permissibly cited the conservative nature of plaintiff's treatment. Plaintiff challenges the ALJ's rationale on the basis that she failed to cite "what other aggressive treatment [plaintiff] must have in order to credit his subjective complaints. The ALJ cannot fault [plaintiff] for failing to pursue non-conservative treatment options if none exist." (ECF No. 13 at 10.)

Plaintiff's argument misstates the facts and misconstrues the ALJ's decision. The ALJ discussed the pain-management focus of plaintiff's treatment not to suggest that plaintiff should have sought out more aggressive treatment options, but rather to infer that because plaintiff's impairments were treated effectively with "medications and other therapies," his allegations of

disabling pain were less credible. (AR 39, 41-42.) The Ninth Circuit has observed that "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). However, the *Carmickle* court qualified this nuance by explaining that the record in that case demonstrated the unavailability of more aggressive treatment options. *Id.* Otherwise, the Ninth Circuit has typically deemed conservative treatment with pain medication to be a legally sufficient reason for discounting credibility, as is a discrepancy between the frequency of treatment and the level of pain alleged. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Molina*, 674 F.3d at 1113–14; *Tommasetti*, 533 F.3d at 1039 (deeming permissible the ALJ's inference that the claimant's favorable response to conservative treatment undermined his allegations of disabling pain). In this case, the ALJ cited exactly these reasons (AR 42), and the record supports this determination (*see, e.g., id.* at 369, 791-796) (showing that plaintiff's doctors refilled medications to effectively curb pain and continued treatment without suggesting more aggressive treatment). The determination is free of error.

Second, plaintiff's daily activities are a clear and convincing reason to find plaintiff less credible. The Ninth Circuit has warned ALJs to "be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Still, a claimant's daily activities may support an adverse credibility finding where the activities contradict his or her testimony, as they do here. *Orn*, 495 F.3d at 639. Plaintiff reported and testified that he can perform the following activities: driving, performing household chores, cooking, maintaining personal grooming and hygiene, doing laundry, shopping in stores, watching television, taking walks, and attending church three times per week. (AR 41; 312–319.) The ALJ reasonably found that plaintiff's activities were inconsistent with the impairments alleged, and thus that his allegations were not fully credible. (AR 41–42).

Finally, the ALJ's citation to the lack of strong support provided by the objective medical evidence is a "clear and convincing" reason for discrediting plaintiff's testimony. Plaintiff contends that the ALJ erred by discrediting his testimony based solely on an alleged lack of medical evidence. (ECF No. 13 at 12.)

Plaintiff's argument is flawed. The ALJ did not state that no objective medical evidence supported plaintiff's allegations of pain, but rather, that the record did not strongly support a finding of *disabling* pain. Based on the totality of the medical evidence, the ALJ concluded that the evidence provided an insufficient basis to find disability. The ALJ supported her determination by disregarding plaintiff's physician's opinion, and instead pointing to the findings of Dr. Gerson and the state agency consultants. (AR 42–43.) The ALJ also discussed clinical findings from medical exams noting that plaintiff is in no acute distress, his alcohol abuse is in remission, and that his liver is not enlarged as it is "within normal limits." (*Id.* at 42–43, 788) The ALJ's conclusion that the objective medical evidence did not strongly support plaintiff's allegations is therefore supported by substantial evidence in the record. Although a lack of objective medical evidence cannot be the sole basis for discounting credibility, the ALJ may properly consider it among other factors, which she did in this case. *Burch*, 400 F.3d at 681.

## IV.   CONCLUSION

The ALJ did not err in her step five analysis, as her finding that plaintiff remained able to perform other work in the national economy was supported by substantial evidence in the record. Accordingly, the court recommends that plaintiff's motion for remand (ECF No. 13) be denied and that defendant's cross-motion to affirm (ECF No. 16) be granted.

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand or reversal (ECF No. 13) be **DENIED** and defendant's cross-motion to affirm (ECF No. 16) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

DATED: July 12, 2017.

_____
UNITED STATES MAGISTRATE JUDGE