UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOSE MUNGUIA MENDEZ, | Case No. 3:16-cv-00510-MMD-CBC |
| Plaintiff, | ORDER |
| v. | |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**I.   SUMMARY**

This is an appeal of a denial of benefits under the Social Security Act ("SSA"). Before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge Valerie P. Cooke (ECF No. 18) regarding Plaintiff Jose Munguia Mendez's ("Munguia Mendez") Motion to Remand to Social Security Administration ("Motion to Remand") (ECF No. 13) and Defendant Acting Commissioner Nancy A. Berryhill's ("the Commissioner") Cross-Motion for Summary Judgment to Affirm ("Cross-Motion") (ECF No. 16). The Court has also reviewed Munguia Mendez's objection to the R&R (ECF No. 19). Further, the Court has reviewed the administrative record[1] filed by the Commissioner. (ECF No. 11.)

For the following reasons, the Court accepts and adopts the R&R in full.

**II.   BACKGROUND**

Munguia Mendez filed for disability benefits, Disability Insurance Benefits, and Supplemental Security Income benefits under Titles II and XVI of the SSA, alleging a disability onset date of June 30, 2012. (ECF No. 13 at 3.) His primary allegedly disabling

---

[1] For ease of reference, the Court will cite to the administrative record as "AR."

ailments are a prior hernia that was repaired with mesh in a surgery he underwent in November 2013, and several ailments related to former alcohol abuse: cirrhosis of the liver, ammonia-induced encephalopathy, and associated pain and swelling in his abdomen and lower extremities. (AR 38, 40.) Munguia Mendez's application was denied on December 17, 2013, and then denied again upon reconsideration on March 31, 2014. (ECF No. 13 at 3.) The denial was affirmed by an Administrative Law Judge ("ALJ") who held a hearing on Munguia Mendez's claim on September 15, 2015. (*Id.*) Further review of the ALJ's decision at the Social Security Administration was denied by the Appeals Council on June 26, 2016. (*Id.*) Munguia Mendez then sought review from this Court.

The Magistrate Judge found that substantial evidence supported the ALJ's residual functional capacity ("RFC") assessment regarding Munguia Mendez's English language skills, and provided specific, clear, and convincing reasons as to why Munguia Mendez's testimony regarding his disability was not fully credible. (ECF No. 18 at 7-8, 8-10.) Accordingly, the Magistrate Judge recommends that Munguia Mendez's Motion to Remand be denied and that Defendant's Cross-Motion be granted. (*Id.* at 10.)

## III.   LEGAL STANDARD

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." *Id.*

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the SSA. In reviewing findings of fact, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519, 522–23 (9th Cir. 2014) (internal quotation marks and citations omitted). The Court must

consider the entire record as a whole to determine whether substantial evidence exists, and it must consider evidence that both supports and undermines the ALJ's decision. *Id.* at 523 (citation omitted). In weighing the evidence and making findings, the ALJ must also apply the proper legal standards. *Id.* (first citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); and then citing *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)).

**IV.    DISCUSSION**

The Court agrees with the Magistrate Judge's recommendation to deny Munguia Mendez's Motion to Remand and to grant the Commissioner's Cross-Motion. The ALJ based denial of Munguia Mendez's application for benefits on substantial evidence from the record and gave specific, clear, and convincing reasons for her finding that Mendez was not entirely credible.

In Munguia Mendez's objection to the R&R, he contends that the ALJ: (A) failed to properly assess Munguia Mendez's English language capabilities; and (B) failed to properly assess Munguia Mendez's credibility. (ECF No. 19 at 3.) With respect to the ALJ's credibility finding, Munguia Mendez argues that certain reasons the ALJ provided to partially discount Munguia Mendez's credibility were improper, specifically: (1) Munguia Mendez responded well to conservative treatment; (2) Munguia Mendez's daily activities conflicted with his claim of disabling pain; and (3) Munguia Mendez's claim of disabling pain was insufficiently supported by objective evidence. (*Id.* at 5-8.) Thus, Munguia Mendez argues the Court should reverse the ALJ's decision and award him benefits, or, in the alternative, remand to the Commissioner for further proceedings. (*Id.* at 5, 6.) The Court disagrees.

**A.    English Language Capabilities**

The ALJ implicitly found that Munguia Mendez was able to communicate at English language level one as defined in the Dictionary of Occupational Titles ("DOT"). (*See* AR at 44-45.) The ALJ's finding as to Munguia Mendez's language skills was implicit in her finding that Munguia Mendez retained the RFC to do the jobs garment sorter, marker II,

or laundry folder—all of which require level one English language skills. Munguia Mendez argues that this determination is not supported by substantial evidence because Munguia Mendez is only able to speak and understand English in a kitchen setting, though Munguia Mendez concedes that his English language skills were sufficiently developed for his past jobs as a cook (which required English language level two according to the DOT). (*Id.* at 5.)

The Court finds Munguia Mendez's argument unpersuasive. The majority of Munguia Mendez's prior jobs over the course of his career required language skills equivalent to English language level two, and Munguia Mendez conceded he could adequately communicate in English to perform those jobs. (ECF No. 16 at 8-9.) Munguia Mendez agreed he is able to read menus and work as a kitchen worker in English. (AR at 40.) Also, Munguia Mendez's English language skills do not appear to be limited to the kitchen. Munguia Mendez responded in English to some questions posed to him by the ALJ at the hearing, stating both that he could understand what the ALJ was saying in English, and that he could speak enough English to shop in stores. (AR 67.) These facts constitute substantial evidence supporting the ALJ's implicit determination that Munguia Mendez was able to communicate at English language level one.

As additional evidence of his lack of language abilities, Munguia Mendez asserts that his hearing notice was delivered to him in Spanish and that he was provided an interpreter for the hearing. (ECF No. 13 at 6-7.) But Munguia Mendez was provided an interpreter and Spanish language hearing notice because he stated on his Disability Report that he could not speak English—not because anyone actually evaluated his language skills. (AR 298.) Indeed, Munguia Mendez stated at his hearing that he requested an interpreter be present because he was unsure he would be able to understand any legal terminology the ALJ or others might use, not because he was entirely unable to function in English. (AR 67.) In sum, the Court finds that substantial evidence supports the ALJ's finding that Munguia Mendez's English language skills are sufficient for him to find another job such as the jobs identified by the ALJ in her decision.

## B. ALJ's Credibility Findings

The ALJ found that Munguia Mendez's ailments could cause pain, but disagreed with Munguia Mendez that they caused totally disabling pain—which depended on a finding that Munguia Mendez was not entirely credible. (AR at 40.) Under applicable law, adverse credibility findings may only be made through adherence to a two-step framework. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Here, the ALJ properly moved through step one by determining that Munguia Mendez's alleged impairments could cause symptoms such as those he alleges—and Munguia Mendez does not challenge that aspect of the ALJ's analysis. Rather, Munguia Mendez's objection regards step two of the analysis. At step two, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1039 (citation omitted). "The ALJ may consider many factors in weighing a claimant's credibility, including '(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" *Id.* (citations omitted). "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" *Id.* (citation omitted); *see also Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) ("[t]he ALJ is responsible for determining credibility . . . .").

The ALJ provided at least six reasons why Munguia Mendez's claim of totally disabling pain was not entirely credible. Munguia Mendez challenges only three of those reasons in his objection to the R&R: conservative nature of treatment, activities of daily living, and lack of objective evidence.[2] The Court addresses each of the three reasons Munguia Mendez objects to below.

---

[2]Munguia Mendez does not challenge the ALJ's other three reasons, which were: Munguia Mendez's impairments were well-controlled with treatment; Munguia Mendez declined to perform various tests, which is indicative of exaggeration or malingering; and Munguia Mendez made inconsistent statements that undermined his credibility. (AR 39-43.)

5

### 1. Conservative Nature of Treatment

Munguia Mendez first argues that the ALJ improperly discounted his subjective complaints because he responded well to conservative treatment. (ECF No. 19 at 5 ("[R]eliance on Munguia Mendez's treatment regimen does not constitute an adequately specific conflict with his reported limitations.").) But "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment," *Tommasetti*, 533 F.3d at 1039 (quoting *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007)), as Munguia Mendez concedes. (ECF No. 19 at 5-6.) The ALJ noted in her decision that Munguia Mendez's doctors treated his liver disease with medication only—a more conservative treatment than surgery[3]—and that the treatment appeared to be effective. (AR 41-42.) This tends to show that conservative treatment was sufficient in treating Munguia Mendez's impairments, which weighs against a finding of disability. *See, e.g.*, *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). As a result, the Court finds that the ALJ's finding of successful conservative treatment constituted a specific, clear, and convincing reason for finding Munguia Mendez's complaints regarding the disabling effects of his pain not fully credible.

### 2. Activities of Daily Living

Munguia Mendez further argues that the ALJ improperly discounted his subjective complaints based on daily activities that are incommensurate with a workplace environment. (ECF No. 19 at 6.) But the ALJ did draw a link between Munguia Mendez's reported daily activities and job skills. She wrote: "Some of the physical and mental abilities and social interactions required to perform these activities are the same as those necessary for obtaining and maintaining employment. The claimant's ability to participate in such activities undermined the credibility of the claimant's allegations of disabling functional limitations." (AR 41-42.) The ALJ drew a permissible inference. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[I]f, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same

---

[3] While the ALJ did not explicitly say this, Munguia Mendez did. (ECF No. 19 at 6.)

physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working.").

Further, the Court agrees with the ALJ that some of the skills and capabilities required to perform the daily activities Munguia Mendez admits he engages in are transferrable to the jobs of garment sorter, marker II, and laundry folder. All of these jobs involve folding and manipulating clothing, primarily in a seated position. Munguia Mendez admitted he does the laundry, which also involves folding and manipulating clothing. (AR 41.) He also admitted he does other household chores, drives, and takes walks, which suggests he could get to and from one of these jobs. (*Id.*) And he watches television, which is typically done in a seated position. (*Id.*)

Therefore, the Court finds the ALJ's finding that Munguia Mendez's reported daily activities conflicted with his testimony that his pain was totally disabling constituted a specific, clear and convincing reason to find Munguia Mendez's complaints regarding the disabling effects of his pain not fully credible.

### 3. Lack of Objective Evidence

Finally, Munguia Mendez argues that the ALJ improperly discounted Munguia Mendez's testimony regarding his disabling pain because of a lack of objective medical evidence. (ECF No. 19 at 6.) Munguia Mendez argues a lack of objective evidence cannot stand alone to support the ALJ's credibility determination. (*Id.*) But this reason cited by the ALJ to discount Munguia Mendez's credibility does not stand alone. As discussed above, the ALJ gave various other reasons as to why Munguia Mendez's subjective complaints of disabling pain were not corroborated by the record as a whole. Munguia Mendez did not even object to three of the reasons the ALJ provided for finding him less than credible. The Court therefore finds that the ALJ permissibly considered that the objective evidence did not support Munguia Mendez's subjective complaints of disabling pain as one factor in finding Munguia Mendez less than fully credible. *See, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot

form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Court's decision on the R&R or the pending motions.

It is therefore ordered, adjudged and decreed that the Report and Recommendation of Magistrate Judge Valerie P. Cooke (ECF No. 18) is accepted and adopted in full.

It is further ordered that Munguia Mendez's motion to remand (ECF No. 13) is denied.

It is further ordered that the Commissioner's cross-motion for summary judgment to affirm (ECF No. 16) is granted.

It is further ordered that the Clerk enter judgment accordingly and close this case.

DATED THIS 17th day of October 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE